## ARKANSAS LAND & LUMBER CO. v. BURNET, Commissioner of Internal Revenue.

### No. 5103.

Court of Appeals of District of Columbia.

Argued April 10, 1931.

Decided May 4, 1931.

W. W. Spalding, of Washington, D. C., for appellant.

Sewall Key, R. L. Williams, C. M. Charest, and Helen R. Carloss, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

This case involves alleged deficiencies of the petitioner in income and profits taxes for the calendar years 1921, 1922, and 1923, in the amounts of $4,746.72, $4,792.76, and $2,796.49, respectively, as determined by the Commissioner, and approved by the Board of Tax Appeals.

The record discloses that prior to March 1, 1913, the petitioner acquired in fee certain contiguous tracts of timber lands and the timber thereon, aggregating 50,025.04 acres, and also the timber on other adjacent tracts aggregating 3,623 acres, all located in the state of Arkansas. At a time later than March 1, 1913, it acquired a sawmill plant, logging equipment, and various other items of personal and real property for use in its

business of logging and lumber manufacturing.

Some time prior to 1921, the petitioner offered to sell all of this property to the Wisconsin & Arkansas Lumber Company, which owned an adjacent tract of timber then substantially depleted, having a sawmill and other equipment fully adequate to log and cut economically all the timber owned by both concerns. The proposed purchaser, however, desired to buy only the timber land and timber owned by the petitioner.

After negotiations extending over a year, the parties on November 2, 1921, entered into a written contract whereby the purchasing company purchased the timber lands and standing timber owned by the petitioner, at the price of $750,000. On the same day the parties entered into a second written contract whereby the petitioner sold to the same company the lumber manufacturing plants and all buildings used in connection therewith, including certain 112 acres of land, and also all personal property of every description then owned by the petitioner, including cash, bank deposits, bills and accounts receivable, logging railroad and equipment, and choses in action, at the price of $124,000 cash and four promissory notes in the sum of $84,000 each, payable respectively in 3, 6, 9, and 12 months after date, the vendee company also agreeing to pay all the liabilities of the petitioner as of that date. In the latter contract the execution of the first or land contract was recited as part consideration therefor.

The assets transferred by the second contract and the obligations assumed by the purchasing company, with book values and depreciation reserves to which the parties agreed, are fully set out in the record. The cost of the personal property, which was acquired by the petitioner after March 1, 1913, including plant, railroad and its equipment, lumber, merchandise, and notes and accounts receivable, less liabilities assumed by the vendee company, is shown to be $796,928.21. The sales price, to wit, $124,000 cash and four promissory notes for $84,000 each, aggregates $460,000, and show a net loss by petitioner of $336,928.15, by comparison between the cost and selling price of the property.

In its income and profits tax return for 1921, the petitioner reported neither taxable gain nor deductible loss resulting from the sale of its timber lands under the first contract, inasmuch as these had been purchased prior to March 1, 1913, at a cost less than the selling price, but not more than their fair market price or value as of March 1, 1913. Section 202 (b) (3), Revenue Act of 1921 (42 Stat. 230). But petitioner claimed a loss of $615,444.22 alleged to have been sustained by it in 1921 in the conduct of its business increased by the loss suffered as aforesaid in the sale of its personal property. This loss was carried forward by petitioner and applied to its gross income for the years 1922 and 1923, whereby petitioner reported no tax liability for either 1921, 1922, or 1923. Section 204 (b), Revenue Act of 1921 (42 Stat. 231).

The Commissioner, upon audit of this return, held that the two written contracts of sale actually provided for the sale of a single body of capital assets, and that, as the entire property had been sold for more than cost, but less than its fair market price or value on March 1, 1913, neither taxable gain or deductible loss from the transaction could be recognized for income tax purposes. The Commissioner accordingly disallowed the net losses claimed by petitioner, and determined the deficiencies upon the amended returns to be $4,746.72, $4,729.76, and $2,796.49, respectively, for the years 1921, 1922, and 1923, and the Board of Tax Appeals sustained this action. 15 B. T. A. 829.

We cannot agree with the Commissioner's determination. It rests upon the assumption indulged by the Commissioner that the two written contracts which were separately executed and delivered by and between the several parties constituted but a single contract of sale for income tax purposes. This assumption is without foundation. At the time of the negotiations between the parties, the petitioner owned two kinds or classes of property, although both were used in the operation of its business. One class consisted of real estate which had been purchased before March 1, 1913. The other class consisted of personal property, all of which had been acquired after March 1, 1913. Different methods of assessing income taxes apply to these classes of property. The parties bargained for the properties as separate units, and finally executed a separate written instrument for the sale and conveyance of each unit. This was not unlawful, and the good faith of the transaction is not questioned. It is probably true that the petitioner would not have sold the timber lands without at the same time selling the personal property, but that fact does not convert the several sales into a single sale. Various cases are cited on behalf of the Commissioner

wherein separate but concurrent contracts between the same parties concerning the same subject-matter have been interpreted or construed together as if constituting but a single contract, for the purpose of ascertaining the true intent of the parties. But this is far from holding that such contracts actually constitute but a single contract.

Accordingly, the deficiencies determined by the Commissioner and redetermined by the Board are reversed and set aside, and this cause is remanded to the Board for such further proceedings as may be consistent herewith.

Reversed.